IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RALPH WARREN GOLDEN,

       Petitioner,

v.                                    CASE NO. 1:10-cv-113-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  The Respondent filed a response and

an appendix with relevant portions of the state-court record (hereafter "Exh.").  Docs.

38, 39.  Petitioner filed a reply.  Doc. 48.  Upon due consideration of the Petition, the

Response, the Reply, and the state-court record, the undersigned recommends that the

Petition be denied.[1]

## Summary of State Court Proceedings

Petitioner was charged in Alachua County with burglary of Virginia Gaff's

dwelling and robbery of Ms. Gaff's purse, in addition to other offenses involving different

victims.  The charges pertaining to Ms. Gaff were severed for trial.  Petitioner filed

motions to suppress evidence seized from his home as well as a line-up shown to Ms.

Gaff.  Following a hearing, the motions were denied.  Trial counsel renewed the

motions at trial, and was permitted to make a voir dire examination of Ms. Gaff prior to

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court
has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

her in-court identification of Petitioner. The trial court again denied the motion to suppress. Exh. D.

At trial, Ms. Gaff testified that she lived in High Springs in a single family home on August 8, 2004. She left her home at about 2:30 p.m. and was gone for twenty to twenty-five minutes. When she returned, she saw a white pickup truck with a white camper top that she did not recognize parked underneath her carport. She parked next to the carport, and stepped out of the car. There were two people sitting in the truck. The driver of the pickup began honking the horn, and Ms. Gaff saw a black male dash out of her house. As the man came by her, he snatched her purse out of her hand, tearing off three of her acrylic fingernails. The man then entered the pickup truck and the vehicle left. Ms. Gaff identified Petitioner in open court, and testified that she had been shown photographs by a detective following the incident. She identified the photograph of Petitioner that she had also selected from the line-up. Ms. Gaff identified her purse and its contents, which included a handicap placard and a check wallet.

A passerby, Steven Gunter, testified that he was driving up Main Street on August 8, 2004, when his girlfriend yelled "he's got her purse." Gunter saw a man running and getting into a white Dodge Dakota truck, and he followed the vehicle and dialed 911, relaying a description and tag number. He identified the vehicle in a photograph. His girlfriend, Tammy McLean, testified that she had a clear view of the purse snatching, and she identified Petitioner both in a photo line-up and in court. She also identified a photograph of the truck, although she initially described it as a Ford Ranger.

Detective Fulwood testified that with the information provided by the witnesses he was able to identify a matching vehicle with a tag number G71 EMD, a 1991 Dodge pickup truck that belonged to Petitioner. Fulwood obtained a photograph of the vehicle, and the victim and the witnesses identified it.

The day after the incident, Fulwood responded to Petitioner's house where Detective Litzkow also was present. Fulwood observed the truck parked in the front yard of the residence and a handicap placard and check wallet on the dashboard. He observed a purse sitting on the arm of a sofa under the roof of Petitioner's open carport.

Detective Branaman also testified that he observed the truck and a handicap placard inside a check wallet in the truck. He also saw the purse under the open carport. Detective Litzkow testified to making the same observations.

Following the close of the State's case-in-chief, Petitioner's trial counsel moved for a judgment of acquittal, which was denied. Petitioner testified in his own defense. Petitioner conceded that the residence, pictures of which were admitted into evidence at trial, was his residence, and that he owned a white 1991 Dodge Dakota pickup truck. Petitioner admitted to having seven prior convictions for felonies or crimes of dishonesty. He testified that he did not know how Ms. Gaff's items came to be located in his vehicle. Petitioner testified that he was gone from home from 9:00 a.m. until 9:00 p.m. on the day of the incident, and that his nephew, girlfriend, son, and son's girlfriend may have been at the house, which is where the keys to his truck were located.

The jury convicted Petitioner of burglary and robbery. Petitioner moved for a new trial, alleging that Ms. Gaff was the mother of an Alachua County Sheriff's officer

who was a witness in the case because he gave a description of the stolen items over the phone.  Petitioner argued that the son should have been deposed.  The trial court denied the motion.

At his sentencing proceeding, the trial court conducted a *Nelson* hearing regarding Petitioner's complaints about his trial counsel's representation, including alleged failure to depose witnesses.  Among others, Petitioner contended that counsel should have deposed Herman Sutton, a confidential informant who had supplied information to Detective Litzkow that resulted in Litzkow taking photographs of Petitioner's residence, and also should have deposed a pawn broker.  Counsel explained that he felt these witnesses were not relevant, because once the officers went to Petitioner's residence they were able to observe certain evidence in plain view.  Counsel felt that deposing such witnesses would only make the State's case stronger because they would provide links in the chain of events that drew officers to Petitioner's residence.  Petitioner asserted other complaints, including the fact that a victim in another offense worked for the State Attorney's Office, which allegedly caused the State to seek harsher sentencing.  After considering Petitioner's complaints and counsel's responses, the trial court concluded that there was no basis for removing counsel.  Exh. F.

Petitioner was sentenced as a violent career criminal to 40-year concurrent sentences for each count.  The State issued *nolle prosequi* as to the remaining counts. Exh. C.

On direct appeal, appointed counsel filed an initial brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).   Petitioner filed his own initial brief, arguing that his

warrantless arrest violated his due process and equal protection rights, and complaining about the denial of his motion to suppress.  Exh. K.  The First DCA *per curiam* affirmed Petitioner's judgment and sentence without a written opinion.  Exh. L.

Petitioner sought postconviction relief asserting eleven claims of ineffective assistance of counsel, and a twelfth claim alleging that under the totality of the circumstances he was denied a fair trial.  The court summarily denied relief as to all but two claims, and granted an evidentiary hearing on the remaining claims.  Following the evidentiary hearing, the court denied the remaining claims.  The First DCA affirmed *per curiam* without written opinion.  Exh. T, U, X.

The instant Petition, which Respondent concedes is timely, followed.  Petitioner asserts ten claims for relief, which may be grouped topically as follows: (1) & (3) trial counsel failed to investigate whether valid arrest warrants were issued and served; (2), (4), (5) & (9) counsel failed to investigate, depose, or call certain witnesses, (6) & (7) trial counsel was ineffective for failing to move for dismissal of the second degree felony robbery charge, and for failing to move for a judgment of acquittal on robbery; (8) trial counsel was ineffective for failing to move for a change of venue; and (10) trial counsel was ineffective due to the cumulative effect of his errors.  Doc. 1.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and

convincing evidence that the state court's factual determination was "objectively

unreasonable" to rebut the presumption that the determination was correct. *Gill v.*

*Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the

state court's adjudication of the merits of the federal claim "resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted) ("The decisions of other federal circuit courts (and our

decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the

decisions demonstrate that the Supreme Court's pre-existing, clearly established law

compelled the circuit courts (and by implication would compel a state court) to decide in

a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77

(2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting

circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*

535 U.S. 685, 694 (2002) (citing *Williams* ).  "Under the 'contrary to' clause, a federal

habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's

ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id.* at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

Because the Petition alleges ineffective assistance of counsel, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786.  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.* at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double

deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Discussion

### *Claims (1) & (3): Failure to investigate whether valid arrest warrants were issued and served*

Petitioner contends that his trial counsel rendered ineffective assistance by failing to investigate whether an arrest warrant was issued and served in Case No. 04-3328, and whether the arrest warrant in Case No. 04-3316-A was valid. Petitioner conclusionally alleges that he was denied due process, and that all evidence seized during his arrest was "fruit of the poisonous tree." Doc. 1.

The trial proceedings at issue in this case occurred in Case No. 04-3328. In summarily rejecting this claim on postconviction review, the state court concluded that Petitioner's claim regarding his arrest in Case No. 04-3316-A was irrelevant because it did not relate to the underlying conviction at issue in Petitioner's postconviction motion. With respect to the absence of an arrest warrant in Case No. 04-3328, the court explained:

> Defendant's claim regarding his arrest in case no. 2004-CF-3328 is also without merit. At the time that Defendant was accused of the crimes in the instant case, he was already in custody. Therefore there was no need for an arrest warrant. There was sufficient information in the incident reports to support an [sic] probable cause on the charges in the instant case and Defendant was properly brought before the Court for first appearance in a timely matter [sic]. *See* Incident Report, dated August 10, 2004; First Appearance Order, August 11, 2004.

Exh. T at 56.

As Respondent points out, the record establishes that *no* evidence was seized in the instant case during Petitioner's arrest because he was in custody on other charges. The evidence used in this case was observed in plain view during a visit to Petitioner's residence to obtain consent to search from other occupants, and then the evidence was seized pursuant to a search warrant.  Exh. G at 270-71.  Petitioner's claim that counsel somehow performed ineffectively with regard to his arrest is vague, conclusional, and unsupported.  He has not shown that any errors by counsel regarding the circumstances of his arrest would satisfy either the performance or prejudice prongs of *Strickland*, and he has made no showing that the state court's rejection of this claim on the merits was contrary to, or an unreasonable application of, federal law.

### Claims (2), (4), (5) & (9): Failure to investigate, depose, or call certain witnesses

Plaintiff contends that his trial counsel rendered ineffective assistance with respect to three potential witnesses: confidential informant Herman Sutton, Renata Crafton, and Kipp Hayes.  Plaintiff alleges that these witnesses could have provided either exculpatory testimony or testimony that would have supported his motion to suppress.  Doc. 1.

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

The Court will address Plaintiff's claims with respect to each witness in turn:

Herman Sutton (Claim 2): Petitioner contends that a confidential informant, Herman Sutton, was an unreliable and biased witness who owed money to Petitioner's mother and had a relationship with Detective Litzkow. Petitioner does not explain exactly how these allegations would support a conclusion that counsel rendered ineffective assistance. Docs. 1, 48.

This claim stems from Petitioner's allegation in his postconviction motion that Litzkow received a tip implicating Petitioner in burglaries to steal guns and jewelry. Petitioner alleged that Sutton was the informant, and that Sutton told Petitioner that he had spoken to Litzkow, although in a deposition Litzkow stated that he did not know the informant. Petitioner alleged that Sutton's testimony was "vital" to show that Litzkow gave false testimony in his deposition. *See* Exh. T at 7-13.

In summarily rejecting this claim on postconviction review, the state court explained:

> 5) In ground (b), Defendant claims that his trial counsel should have investigated and deposed Herman Sutton, and that his failure to do so amounted to ineffective assistance of counsel. This issue was addressed at the *Nelson* Inquiry held by the Court prior to sentencing. *See* Disposition Hearing, dated March 20, 2006, at 8-11. Trial counsel sufficiently demonstrated, and the Court agreed, that the decision not to investigate or depose Herman Sutton was based on sound trial strategy. This ground is conclusively refuted by the record.

Exh. T at 57.

As noted above, at the *Nelson* hearing, trial counsel explained that in his judgment Sutton would not have provided any relevant information that would have aided Petitioner's defense. He did not depose Sutton because while Sutton may have

implicated Petitioner by informing on him to police, the physical evidence at Petitioner's residence was observed in plain view by the officers prior to obtaining a warrant. The court stated "[o]kay. If that was this gentleman's role, I don't see any purpose in deposing him either."

In view of the heavy showing necessary to succeed on a claim that counsel performed deficiently with respect to an uncalled witness, and the deference that must be afforded to counsel's strategic decisions, on this record the Court concludes that Plaintiff has failed to establish any deficiency in counsel's performance. Counsel expressed a reasonable strategy regarding this witness, which the state court accepted. Petitioner has not shown that any testimony by Sutton would in any way undermine the evidence used to convict him, which included eyewitness testimony by the victim and others, and physical evidence in the form of the property stolen from the victim. Petitioner has made no showing that the state court's rejection of this claim on the merits was contrary to, or an unreasonable application of, federal law.

<u>Renata Crafton (Claims 4 and 5)</u>: Petitioner contends that Ms. Crafton, who was present at his residence when officers observed the truck and its contents and the victim's purse, did not give law enforcement officers permission to search his property, and that trial counsel was ineffective for failing to interview or depose her, or to call her as a witness at the hearing on his motion to suppress. Doc. 1, 38.

The state court rejected this claim following an evidentiary hearing:

> 1. Defendant alleges that trial counsel was ineffective for failing to interview Renata Crafton or to call her as a witness at his suppression hearing. At the suppression hearing, there was testimony which indicated that Ms. Crafton consented to a search of the exterior of Defendant's house. Defendant contends that had Ms. Crafton been called as a

witness, her testimony would have shown that she did *not* consent to the search. And, based on that testimony, the Court would have disbelieved the testimony of the officers and granted the motion to suppress. *See* Suppression Hearing Transcript at 77-78.

2. During the evidentiary hearing, Renata Crafton testified that she was at the residence when Officer Mark Litzkow asked for permission to search the house. Ms. Crafton states that she did not "give consent" to a search outside of the house. However, at the time that the request was made, officers were already lawfully outside of the house. *See* Suppression Hearing Transcript at 23 (lines 19-25)-56 (lines 1-4). As a result of the search outside the house, a stolen purse was found in the carport area; and, the vehicle associated with the burglary and robbery was found in the yard. *See* Suppression Hearing Transcript at 16 (lines 3-25)-23 (lines 1-7). These items were the basis for the officers obtaining a search warrant.

3. Trial counsel (Dan O'Connell) testified that, prior to the suppression hearing, Defendant told him that Ms. Crafton would be at the hearing and that she would testify that she did not consent to the search outside of the house. Defendant assured counsel that he had a special relationship with Ms. Crafton and that he would make sure she came to the suppression hearing. However, Ms. Crafton failed to appear at the suppression hearing as promised. She also failed to appear at her deposition scheduled two weeks later. In addition, she further failed to appear at a deposition that was scheduled to occur prior to the evidentiary hearing on the instant motion.  According to Ms. Crafton, she is not interested in being involved in this case.

4. This Court finds that based on the testimony at the hearing that Ms. Crafton's testimony would not have affected the outcome of the suppression hearing. First, even if Ms. Crafton did not *expressly* consent to a search outside the house, she did allow the officers to look around the property in her presence. Second, the search itself was limited in scope and some of the evidence, such as the vehicle was clearly visible from the road. This Court also notes that the officers had a lawful purpose for being on the property, which was to obtain consent to search the house. Once on the property everything that the officer's subsequently found was in plain view. There is no indication that the search exceeded the scope of Ms. Crafton's permission. This Court further finds that Ms. Crafton's failure to appear at the suppression hearing was not the fault of trial counsel. Instead, Ms. Crafton, despite her special relationship with Defendant, had deliberately avoided testifying on Defendant's behalf until now. And, even now, her testimony is equivocal at best as to whether she permitted the officers to search the exterior of the house.

Exh. T at 106-08.

The state court credited counsel's testimony that Ms. Crafton was expected to testify at the suppression hearing but failed to appear at the hearing and a subsequent deposition. Petitioner points to no error in the state court's determination that Ms. Crafton's testimony was at best "equivocal" and would not have altered the outcome of the suppression hearing. This record thus supports a conclusion that counsel neither performed deficiently nor was Petitioner prejudiced with respect to Crafton's alleged testimony. On this record, Petitioner has not shown that the state court's rejection of this ineffective-assistance claim on the merits was contrary to, or an unreasonable application of, federal law.

Kipp Hayes (Claim 9): Petitioner conclusionally alleges that "Kipp Hayes was a material witness who had exculpatory information regarding Petitioner." Doc. 1. Such conclusional assertions, unsupported by any factual allegations, are plainly insufficient to warrant habeas corpus relief.

In his state postconviction motion, Petitioner asserted that Hayes was a pawnbroker who provided Detective Litzkow with incriminating information about Petitioner. In summarily rejecting this claim, the state court explained:

> Defendant claims in ground (j) that trial counsel was ineffective for failing to investigate and depose witness Kipp Hayes. In case no. 2004-CF-3316 Defendant was originally charged with armed burglary of a dwelling and trafficking in stolen property. Kipp Hayes worked at the pawn shop where investigating officers found the property allegedly stolen by Defendant. Defendant now claims that trial counsel should have interviewed Kipp Hayes because he had exculpatory information about Defendant. The charges in case no. 2004-CF-3316 were dropped by the State and therefore there was no investigation necessary in that case and no prejudice suffered by Defendant. Furthermore it should be noted that Defendant has filed his claim under case no. 2004-CF-3328, and

therefore any claims pertaining to another case are procedurally barred.
This claim is without merit.

Exh. T.

Petitioner points to no connection between the Gaff burglary and robbery and

any property found in a pawn shop.   His allegations are devoid of any facts that

suggest Hayes had any information relevant to this case, let alone information that was

exculpatory to Petitioner.  On this record, Petitioner has not shown that the state court's

summary rejection of this ineffective-assistance claim on the merits was contrary to, or

an unreasonable application of, federal law.

### Claims (6) & (7): Ineffective assistance regarding robbery charge

Petitioner contends that his trial counsel was ineffective for failing to move to

dismiss the second degree robbery charge where the information supported only a

charge of third degree robbery by sudden snatching, and failed to move for a judgment

of acquittal on the ground that the evidence only supported a charge of robbery by

sudden snatching.  Doc. 1.

In summarily rejecting these claims on postconviction review, the state court

explained:

> In ground (f) Defendant argues that trial counsel was ineffective for failing
> to move for a dismissal of the robbery charge. According to Defendant the
> factual basis established in the information, the investigative reports, and
> the testimony by the victim only supported a charge of robbery by sudden
> snatching. In order to prove a conviction for robbery, the prosecution must
> show that in the course of the robbery "there was use of force, violence,
> assault, or putting in fear." Fla. Stat. §812.13. In the incident report the
> investigating officer reported that three of the victim's fingernails were
> ripped off in the process of her purse being stolen. *See* Incident Report,
> dated August 10, 2004. At trial the victim testified that her fingernails were
> ripped off and that she was scared during the time of the robbery. *See*
> Trial Transcript, at 43 (lines 24-25), 44 (lines 1-10), 50 (lines 22-25). The

victim's testimony and the officer's report both support the charge of robbery under the statute. Trial counsel cannot be found ineffective for failure to file a baseless motion. This argument is without merit.

Exh. T.

Under Florida law, "robbery by sudden snatching" means the taking of money or property from the victim's person, with the intent to permanently deprive the victim of the property, when, in the course of the taking, the victim was or became aware of the taking. No showing of force by the offender or resistance by the victim is necessary. Fla. Stat. § 812.131.

The state court's interpretation of state law is presumed correct. The state court pointed to facts in the record that supported the higher charge of robbery because there was evidence that in taking the victim's purse Petitioner exerted sufficient force to rip off some of the victim's fingernails and that she was put in fear during the taking. As the state court explained, counsel cannot be deemed to have performed deficiently for failing to file meritless motions that are unsupported in the record. On this record, Petitioner has not shown that the state court's summary rejection of this ineffective-assistance claim on the merits was contrary to, or an unreasonable application of, federal law.

### Claim (8): Failure to move for a change of venue

Petitioner contends that he was deprived of a fair trial because counsel failed to seek a change of venue. He contends that the victim and "numerous other witnesses" are relatives of law enforcement officers and members of the State Attorney's Office. Doc. 1.

In rejecting this claim on postconviction review, the state court reasoned:

> Defendant makes numerous allegations with regards to numerous victims and their relationships with law enforcement officers and employees of the Office of the State Attorney. However, as previously stated, only matters pertaining to the instant case and the victim in the instant case, are relevant to the instant motion. The victim in the instant case was Virginia Gaff whom Defendant alleges is the mother of an Alachua County Sheriff's detective. Defendant does not establish that he suffered any real prejudice as a direct result of this relationship. Instead the argument consists of unsubstantiated allegations that don't relate to the trial and sentence in the instant case. This claim is without merit as Defendant has failed to establish that he suffered any actual prejudice.

Exh. T.

In this Court, Petitioner again points to no facts suggesting that counsel's failure to request a change of venue caused any prejudice to him. As Respondent contends, Petitioner was not entitled to a change of venue simply because he robbed and burglarized the home of a mother of a law enforcement officer. Respondent further notes that only one juror indicated that he knew anyone within the State Attorney's Office, and that juror affirmed that he could serve fairly. Doc. 38 at 83-84. On this record, Petitioner has made no showing that any motion for change of venue would have had a remote chance of success. His assertion that he was denied a fair trial due to counsel's failure to seek a change of venue wholly conclusional and insufficient to support a claim for habeas corpus relief. Petitioner has not shown that the state court's summary rejection of this ineffective-assistance claim on the merits was contrary to, or an unreasonable application of, federal law.

### Claim (10): Cumulative Effect of Counsel's Errors

Petitioner conclusionally alleges that "the cumulative effect of counsel's errors and omissions reviewed under the totality of the circumstances prejudiced the

Petitioner."  Doc. 1.

In this case, the trial court preliminarily found that even considered cumulatively, the alleged errors by counsel that did not require an evidentiary hearing did not establish that ineffectiveness had been shown. The trial court found no error occurred in the two grounds addressed at the evidentiary hearing.  Exh. T.

In rejecting a similar "cumulative error" argument made by a section 2254 petitioner, the Eleventh Circuit has stated "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564 (11th Cir. 2009) (*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

As previously discussed, Petitioner has not demonstrated that the state court erred in concluding that none of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance.  Therefore, there are no errors to accumulate and Petitioner has not demonstrated his trial was fundamentally unfair.  *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30-*31 (N.D. Fla. Sept. 30, 2009)("As previously discussed, none of the alleged errors of trial counsel, considered

alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").

Accordingly, Petitioner's tenth claim for relief for relief has no merit.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) should be **DENIED**.

2. That a certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 25th day of July 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.